Mr. Saini, if found credible, would clearly qualify for asylum based on three incidences of confrontation with the authorities in India and torture. Now, the immigration judge finds him not credible, primarily because documentation that Mr. Saini submitted, which came from his father and a village elder in India, the immigration judge maintains is contradictory to Mr. Saini's testimony. But Mr. Saini's testimony is consistent. Now, once again, as a threshold matter, there's Mr. Saini, in terms of his own testimony, doesn't contradict himself. Most of the contradictions, if they are contradictions, come from other documentation, particularly the letter that his father provided. And I believe that can be resolved simply by noting that the fact that the arrests aren't mentioned in the letter is because the arrests were not official in India, and therefore unable to find him. There's another disturbing issue that the immigration judge doesn't account for in terms of the injury to Mr. Saini's arm. There is a letter from the doctor. The immigration judge says that, well, a hematoma is not a broken arm, but the immigration judge notes in the record that it's perceived that the arm is distorted. So I believe that the evidence of what happened to Mr. Saini is clear from the record that are there. Now, turning for a moment to Mr. Saini's motion to reopen and motion to reconsider, the Board of Immigration Appeals denies the motion to reopen based on what they call a The trial attorney states that the motion is that the I-140 is filled with fraud. But as a basic due process issue, the trial attorney can't make that determination. Fraud is a factual determination that has to be determined in a factual hearing. That's not in that record. The board simply says we agree with the trial attorney's opposition. And as I argued in the briefs, the when you look carefully at what's there, there's a lot of sloppy stuff by Mr. Saini's prior attorney. But it's not fraud. And you admit it's inconsistent, the documents that he submitted. Well, in his I-140 and in the motion to reopen, it says things like his immigration status and it's typed A-S-Y. The attorney for the Immigration Service had claimed that that's fraud. It's wrong. It's inaccurate. And that's correct. But at other points in the application, there is proper documentation. Moreover, the I-140 is likely to be approved because the I-140s are adjudicated based on the employer's financial ability to pay the proffered wage. And that was that documentation was there. In any event, the trial attorney simply can't say it's fraud or likely to be denied without there has to be some type of hearing as to why reviewing this evidence, it simply can't be they're You're saying the BIA cannot refuse to reopen if they look at the document and it's false on its face? Well, the BIA has discretion to refuse to reopen. But the BIA is saying we simply agree with the trial attorney. But the BIA, if it's making a determination that a document is, it's actually not a document, that statements in the application are false. If the BIA has to have some type of analysis on that, it can't simply say the trial attorney is right. So and then when we filed the motion to reconsider the board's denial, the BIA simply said no, no further, no issue of law was raised. And that's not correct either. There was a lot of law and arguments that was raised there. But to make a determination that there's that there's fraud without having a hearing on fraud seems to be a due process violation. Because Mr. Siney has an approved labor certification. And were that case to be reopened, he would be able to adjust his status and and receive a green card. So I'd like to reserve the rest of the time for rebuttal. You bet. Thank you. You look like the lawyer from the other case. Oh, I do. I must have a sister here. Allison Igoe representing the Attorney General. Oh, I didn't. Did that do anything? There are two issues in this case. First, the question of Mr. Siney's credibility regarding his asylum application and the issue of the board's denial of his motion to reopen. The immigration judge set out numerous cogent reasons for finding Mr. Siney was not credible. All of those reasons went or material regarding the claims that he made in his asylum application. And they were supported by overwhelming evidence. I disagree with my colleague when he says that the only reason that the immigration judge stated were differences with his documentation. Although the immigration judge set out at least six inconsistencies between Mr. Siney's testimony and the documentation, she also said that his – she found his testimony was internally inconsistent regarding the dates that he attended college, which she found material because his entire claim was based on his membership in the All-India Sikh Student Federation, which he claimed he joined and was active in during his college years. And in fact, the immigration judge even specifically said that although he cleared up the date that he – I believe that he entered, that he never changed the date that he left. And it was just inconsistent with his other testimony regarding the activities with the AISSF. Was the petitioner given a chance to explain to the immigration judge the differences and the dates that he supposedly left? He was given more than a chance. And in fact, the immigration judge – this is a very, very detailed, very reasoned decision by the immigration judge. She notes on numerous occasions where he was given the opportunity, and he did – he either offered explanations that were not reasonable or he could not offer an explanation. The judge also found that his testimony was – lacked detail. Whereas his application was detailed, his own testimony was – was not detailed at all. This is a gentleman who claims that he belonged to the AISSF. There were four, five, or six different factions of the AISSF. The Metta Chawla faction, for instance, is a very violent – was a very violent faction, whereas the Manjit Singh and the Batu factions, you know, were seeking calisthenics through nonviolent peaceful means. That would be a very important distinction for somebody seeking asylum here. And in nowhere in his testimony does he even explain, like, which section he belonged to. And then there's the question of his documentation. All of his documentation is inconsistent. His father writes a complaint in 1997 with the police in which he – he documents the abuse that's gone on. His family has been harassed and abused and – and persecuted. And yet nowhere in any part of that complaint does he list any of his son's supposed three arrests. He not only doesn't list them, he says that – now, we're this complaint. He says, in the past two or three years, which covers the entire period of time during which Mr. Seney's arrests supposedly occur, the police came to my house over and over again trying to find my son, but they were unsuccessful. He literally refutes his son's testimony and his son's claims. And then there was Mr. Rahm, who was a sarpunk for as long as Mr. Seney could remember. So he obviously was the elder who showed up at least two of his arrests. Mr. Rahm's first declaration makes no statement about any arrests. He would have been a pivotal witness. And then there's the issue of the driver's license that the judge specifically said it brings into question this man's very identity. What was missing? The thumbprint page was missing. There was no – the – the license should have had a signature across the picture, suggesting that the picture has been replaced because there was no signature across it. And that was one of the instances in which Mr. Seney was given the opportunity to explain the problem, and he could not explain it. He had no rational explanation for that. I could go on. I mean, the evidence supporting this judge's credibility determination is simply overwhelming. They all went to the question of whether this man belonged to the AISSF, which was the entire basis for his asylum application. And there is no – there is nothing in this evidence, in this record, that would compel an opposite conclusion. I would like to take the rest of my time, if the Court does not have any questions, to address the motion to reopen in this case, because that is the second part. There were – these are three cases that were – that were combined. Mr. Seney's petition from the original denial of his asylum application, then the denial – the board's denial of his motion to reopen, and then there was a third motion – or, rather, a third case. The board denied his motion to reconsider. A motion to reopen is addressed to the board's discretion. They are disfavored. There are instances where if somebody comes in and shows they are eligible for relief, the board will reopen. This is a case where a man came in with an application – first of all, his motion simply said, I move to reopen. Here are documents. gave no reasoning, just submitted the documents. The documents are riddled with errors. Anybody trying to adjudicate this – these petitions on their face would be unable to do so. His A number was wrong. It claimed that his – his underlying immigrant – his I-485, which was the adjustment application, claimed that the immigrant visa petition had been granted. It had not been granted. It claimed he was given asylum. He had not been given asylum. And I disagree with my colleague. He claims that – that the board found fraud in this case. What the government said to the – to the board was that there are misrepresentations. They never use the word fraud. There are misrepresentations in this – in these applications. And when you go – and interestingly enough, in his – I think it's his adjustment application when he's asked if he belongs to any – if he belonged to any type of group or organization anywhere in the world, he says no, despite the fact that his asylum application was based on his membership in a political – a student political organization. The question is, on a motion to reopen, did the board abuse its discretion? In that, did they act in an arbitrary, irrational manner that was contrary to the law? This gentleman put in front of the board an application that the agency could not have adjudicated on its face for multiple reasons that the government pointed out. The board certainly did not abuse its discretion when it denied his motion to reopen on that basis. He then moved to reconsider. The basis for a reconsideration is to point out an error of fact or law in his motion to reconsider. All he argued was this wasn't fraud, this wasn't a misrepresentation. Just as he argued in his asylum application, it was just all a series of mistakes. Even if it was a series of mistakes, given what the board had in front of it at the time of his motion to reopen, the board did not abuse its discretion when it denied reopening. It did not abuse its discretion when it denied reconsideration. And I'm asking this Court to deny Mr. Sinney's petition. Thank you. If the Court has no further questions. Thank you, Ms. Ido. Mr. Gordon, you get the last word. Yeah. I direct the Court to page 103 of the record, where – which is the attachment to Mr. Sinney's I-140, where he notes that his Ninth Circuit – I'm sorry, 104, where he notes the Ninth Circuit – pending Ninth Circuit petition. So it would be impossible for Mr. Sinney to be misrepresenting his status as an asylee if he had put in there that his status was pending at that time. So I do think that based on the overall I-140 package, there are some inaccuracies in there, but they're minor inaccuracies, and that the board did abuse its discretion by not reopening. Thank you. Thank you, Mr. Gordon. Ms. Ido, thank you. The matter argued is submitted.
judges: Alarcon, Siler , Silverman